All right. Mr. Campbell, when you're ready. Good morning, ma'am. Please report. My name is Dana Campbell. It's my privilege to be here with you today on behalf of the appellants Jimmy Brad Foreman and his company Security and Continuity Services, U.S., or SECON, U.S. In this case, we are asking the Court to reverse a judgment in the amount of approximately $371,000, together with attorney's fees of $81,000, in favor of the appellee Security and Continuity Services, U.K., or SECON, U.K. I'll refer to them as SECON, U.S. and SECON, U.K. because they're similar. We submit that the judgment in this case was erroneous as a matter of law for the reason that the order on the motion for judgment, which was entered after the pleadings were struck, and of course, we do not concede that the pleadings ever should have been struck, but in any event, the order that was entered on the motion for judgment following the striking of the pleadings is not consistent with the pleadings, including the very contract upon which SECON, U.K. sued. Specifically, the agreement in this case provides a relevant part that in the event of dispute, all money shall be retained by the respective SECON company that performs the work. That is, only in the event that the parties were in agreement as to who was the primary sales lead and who was the secondary sales lead on each additional sale was there to be any split of net earnings. So there being a dispute, there was no basis for any splitting of any earnings in this case. Let's back up a little bit. Have you been, counsel, involved in this proceeding throughout? No, I have not, Your Honor. When did you get into this practice? I came in at the time the notice of appeal was filed, yes. So you had nothing to do with the proceedings before Judge Hughes in district court? Correct. Did you write the brief in this case? Yes. Your name appears on it. Yes. All right. You're just losing me a little bit on this shotgun approach to what's wrong here, so why don't you be a little more specific because I'm not sure some of the assertions being made in the brief were even raised in district court. So that's what I'm a little confused about. Okay, and I hope I'm being responsive here. Our position is that the pleadings must support in the judgment, and in this case, you've got a contract that is attached to the pleading, okay? And to the extent it is inconsistent with the allegations in the pleading, under Rule 10, the contract controls. So when the court struck the pleading, the answer in counterclaim, it was required then to consider whether there was a viable claim for relief stated in the complaint. Nothing had to be raised, although I will submit that it was raised, in that there was a specific statement, albeit struck, that the pleading, that the complaint failed to state a claim upon which relief could be granted. So it was raised in that regard, but I was— It was raised in the answer? It was raised in the answer which was struck, and I understand where the court's going with that, in that it was struck. But— You don't understand where I'm going. Well, I apologize. I don't believe you can read my mind. I know I cannot, Your Honor. I have many things, but I am not a mind reader. Go ahead. Okay. What I'm saying, though, is that even if a pleading is struck, and that there are good grounds to strike that pleading, the court must look to the answer, the court must look to the complaint, including the attachment, and determine whether it states a viable claim for relief. A default is not a confession of liability. If it were, then you'd be able to enter a judgment with no basis in law or in fact. And here what I'm saying is that irrespective of whether the pleading was struck, the complaint, because the document attached, the agreement attached, provided that there was not to be any split of earnings where there was a dispute, there was no basis for the judgment. There was simply no basis upon which you could make an award to Security and Continuity Services UK because there was no basis for splitting based on the phase of the contract that was attached to the pleading. And the default could not be a confession of liability on a contract that didn't provide for liability. Does that answer the Court's question? I'm trying to be responsive, but— I'm just trying to understand what went on here. You started out with this broad brush, and I just wanted you to be a little more discreet. I didn't know at the time whether you were talking about the damages calculation or the underlying default judgment. Well, the damages calculation is similarly flawed, Your Honor, for this reason. Also attached— I understand the calculation of damages wasn't challenged in district court. And again, I wasn't there, and neither were you. No, I disagree vehemently. Well, tell us why. Because Mr.— Let's stop. Time out. Because as mentioned, this is hard to follow. Let's go back to the beginning and first iterate to us, bullet point, what you are contesting. I mean, what's that issue that was raised below? Just articulate those before you expand on it, all the way back to if there are arguments about discovery and that, so we can focus on where the meat of this is. So just first off, just give me the bullet points of what was raised below that you're asserting here on appeal. Okay. The first thing we dispute is the denial of any discovery to Seacon U.S., specifically that the initial hearing, there was a very broad discovery order in favor of Seacon U.K. where all Seacon U.S. was granted was a one-page, one-paragraph letter stating whether they agreed with our position. All right. Second point. Second one is that when we asked that that be expanded and we be granted the same discovery, we were told that we'd get to the credits after we determined what the debits were. That never happened. There was never any discovery. The only discovery that was ever granted here was that one-paragraph letter. Those are your two discovery points? Those would be the two discovery points. All right. Moving from discovery to? But then you get to the striking of the pleading to the extent that that's a discovery point. All right. And that would be that the court struck the pleading without making any findings of bad faith, without making any findings of undue prejudice, and without making any findings that any other sanctions had been considered. I would point out in this court's meeting— The fact that he repeatedly ordered you to provide this discovery and kept extending the time for you to do so, and even when he struck the pleading said, I'm striking your answer, but if you comply with my prior order, it's not going to be struck. Right. He tried about three times, as I recall. He did give multiple orders. I believe there's like seven discovery orders in this case. All of them are very short, not more than three paragraphs, and contain no findings. But what I think you need to understand here that's very important is that— Well, just as an aside, he's not required to make findings, but continue with your— Well, for this court to be able to determine whether it's an abuse of discretion, I think there has to be findings. That's one of the problems here. And one of the things I think this court has to look at is what was the underlying order that was breached that gave rise to the order striking the pleading? And in this case, the third discovery order that was entered required that SECON US produce everything related to any business with which Mr. Foreman was connected. That is so broad, and this was specifically— Did you contest? Did you object to the— Absolutely. Absolutely. The argument was made by Mr. West very expressly that we don't even know what to produce. We can't comply if we try. They went to the court and said, look, we've produced over 8,000 pages here. Please look at this in camera and see what we've produced. See if there is any grounds for any prejudice. I think this is very important here. There wasn't even an argument. There wasn't even an argument of prejudice being urged by the FLEs at the time the pleadings were struck. It was only after that time that there was even an argument about prejudice. So on that basis, we believe looking at the underlying discovery order, which was so broad as to be impossibly complied with, that the order striking the pleading has to be reversed. So there's a writing in the record wherein your clients complained to the district court about the breadth of the discovery order, et cetera, et cetera. Yes, and in fact asked for in-camera review for that very reason. There was a specific motion asking for in-camera review. Because, as I say, over 8,000 pages have been produced. It was not like there was no effort being made here. There was definitely effort. Well, you know, there was something. I mean, you know, Judge Hughes is hands-on, and we have a lot of judges that way. He doesn't write a lot and all that, but he doesn't get reversed any more frequently than judges who write us 100,000 pages. But the point is, as we read it, something was going on here to have so many discovery orders, and the judge finding that there's noncompliance and so on and so forth. So you're just saying that Judge Sulis-Fonte, you know, is making this difficult? I mean, my view of the record here in the briefs that the judge was asking for compliance repeatedly, and this wasn't happening. So what am I missing? Well, I think what you're missing is that he was concluding that compliance wasn't happening without looking at what compliance had been had. That's exactly our point, is we asked that he take a look at what had actually been produced, and he refused. You wanted him to read the 8,000 pages? I think that some in-camera review would be appropriate, and that once— You really want him to look at 8,000— No. I'm not telling this Court that he had to look at all 8,000 pages. All right. So what did you want him to do? Well, I think we wanted him to conduct in-camera review and see what had been produced. It's a general proposition, because he would have seen. I don't think— And I hate to interrupt, because I'm not sure you're done answering that question. I really want to get to the bottom of it. So are you saying that you produced everything that you were ordered to produce, and the judge just refused to look at it and agree with you that you had produced everything? No. No. What I'm saying— So you didn't produce everything that you were ordered to produce? Judge, what I'm saying is that it's— Could you say yes or no and then explain? So you didn't produce everything that you were ordered to produce? I think the answer to that question is probably correct. They did not produce everything they were ordered to produce, because it was impossible to produce everything they were ordered to produce. Everything related to any business with which Mr. Foreman is connected, well, if he owns publicly traded stock, does that— That may be overly broad, but it's not impossible to produce. There are documents related to anything that he's involved with, aren't there? Well, I guess, would that require that he produces utility bill? That's a business he's connected with. Maybe. Maybe. And that's effectively what— Well, overbroad is one argument. Impossibility is another. Well, it's so overbroad as to be impossible, and I think that was the position that Mr. West was arguing, is, look, we're doing our best. It's not like we're not producing anything. We're producing a lot of things. We're doing what we can, and that was the other thing, is that the initial discovery order required that he produce— And you said something about in camera. Yes. So that means you didn't produce these to the other side. You wanted the judge to review it in camera to determine whether or not you should be required to produce it to the other side. Is that why you're talking about in camera? I don't know that that would be true of all of what was being— Well, then why was the review going to be—why would he need to conduct an in camera review? Well, I think that in camera may be just a choice of a term, and they wanted it to be reviewed by the court. They wanted the court to see what had been produced, because like I said— I think one of the problems here is we've got a lawyer, and you keep referring to a Mr. West, so I assume that was the lawyer for Security U.S. You keep referring to what Mr. West did or what you think, or you weren't there, and this was a discovery dispute, and you weren't involved in it. So you can tell us what you think the record says or what the record supports, but the problem is, for example, you're saying the judge should review this in camera. You can't tell us whether they'd been produced to the other side. It's just a problem with discovery disputes, and it's, as Judge Stewart has said, you've got to sort of be there. You've got to be there to know what really happened, and you weren't there. I wasn't there, but I do know what is in the record in terms of what's been produced. In fact, in the motion— Had anything been produced to Security U.K.? Yes. What had been produced? There had been a number of different financial documents, and that was one of the problems here with this case, is that the initial discovery order required on a monthly basis that an income statement be produced. This is a one-man company. He didn't have that kind of thing, but he was being ordered to create it from QuickBooks, and that was one of the problems here, is that you've got a one-man company. It's Mr. Foreman, and he's being ordered to produce things in discovery that he doesn't know how to produce. I think he testified. I'm an engineer. I'm not an expert in QuickBooks. He was doing— Let me try this. You started at a point where I think what you were saying is, whatever the basis for striking the answer, whether it was right or wrong, the answer was stricken, and then you begin at a point where he's making a determination about damages based on what's left, which is their complaint. Your argument in that connection is that the complaint was insufficient to support the damages award. That's exactly right, and that's why I start there, is because I don't think it really matters what happened before, and I'm not saying that it's not important, but I'm saying it's not important to the decision of this court, because if, in fact—and I think this is the case— Did they ask for any damages in their complaint? They did ask for damages, yes. But they asked for what? They didn't ask for liquidated, semi-dumped pollutants. They didn't ask for what? Or a liquidated sum, I don't believe. And that's the other thing, and this is very important. Let's not lose sight of this. At the time, they didn't move for judgment based on the pleading. They submitted a declaration of Mr. Farmer. And Mr. Farmer's affidavit—or, excuse me, declaration—goes far afield. In fact, he's not relying on the contract. If you look at that declaration, you'll see it says, my expectation in entering into this agreement was, and then goes on to describe his expectations.   It's not just a simple calculation of this is the net income. It's got this elaborate diagram. And also, he contradicts the pleading insofar as he says in his declaration—and my time's up, but if I could finish—that I was responsible or played a part in ten placements, when the complaint says he played a part in only seven placements. So it's in direct contravention, and on that basis alone, the court must reverse. You cannot have a judgment based on an affidavit that disputes the very allegations in the case. Thank you. All right. Mr. Campbell, you've reserved for both times. Mr. Rodriguez, something tells me you viewed his case differently. Yes, Your Honor. May it please the Court? I'm Miguel Rodriguez. I'm counsel for the appellee. Were you counsel at the time in—were you counsel in district court? Yes. For all but the initial month, the initial trial counsel went on maternity leave, and I took over from her. And so I was involved in from about August of 2012 onwards. I was president at all the hearings. I deposed Mr. Foreman. I cross-examined him at the hearing on the motion for sanctions. And I think it is important for this Court to realize— There was a hearing on a motion for sanctions. Yes, sir. Where was the damage—was there a hearing when it was determined what damages would be? Correct. Was that the same hearing? There was a different hearing after that. So there was— You moved for sanctions. Correct. And the sanctions he granted was he struck their response. Yes. And it was not— And then you had a separate sanctions hearing on damage—I'm sorry, a separate hearing on damages. That's correct, Your Honor. Two hearings? Correct, Your Honor. And I think just to point to the Court, to the conduct specifically that Judge Hughes had in front of him that led him to lead to the ultimate sanction that was provided to him. I'd point the Court to the Record on Appeal at pages 581 to 691. This is a certify relating to the motion for sanctions. And by this point in December of 2012, we have all of the history of conduct, all the prior orders that had not been committed, all the conduct where Mr. Foreman admitted to deleting and not preserving huge categories of information. This is not utility belts and things. These are—this is a case where the damages are derived from the contractors he placed with KPMG, how much he paid him versus how much KPMG paid SecCon US. So in order to put all these pieces of the puzzle together, we need to know what contractors were placed, what were their timesheets, how much did the contractors bill SecCon US, how much did SecCon US bill KPMG, put all those pieces of the puzzle together to determine what the damages are available to my client. Was that stuff never provided? Categorically, what wasn't provided? Categorically, what was not provided. All the timesheets, all the worker invoices, all the contracts between the workers and SecCon US, all the contracts between SecCon US and KPMG. Some of them were provided, and one of the documents we submitted and put in front of Mr. Foreman on cross-examination in front of Judge Hughes was a chart where we outlined an excruciating detail, something I prepared in great detail, saying here are all the contractors you've given us. You've given us a timesheet for this month but not these other months. You've given us a contract for this period but not for these other periods. Am I getting this wrong? He admitted that those inconsistencies were accurate, that he had not produced all the documents to fill in all of those gaps. And this was at the motion, at the hearing on the sanctions motion? That's correct, Your Honor. And after, at that hearing, Mr. Foreman admitted that he created a document, the court early on in July of 2012 ordered Mr. Foreman to produce monthly asset and liability statements, all financial statements, but including monthly asset and liability statements. He didn't produce them. Was it at the motion on the sanctions hearing that the judge told Mr. Foreman that he was dancing around answering the questions? Mr. Foreman was evasive throughout that. Is that where he said, you're doing this all to you around these? That's correct. That's correct. He said you're not a very good answerer. That's correct, Your Honor. But during the questioning, he did answer the question that he created a document that was an income statement. He put over it monthly asset and liability statement and created that and offered that to satisfy the court's order that he produced monthly asset and liability statements. It's an income statement. He blacked out the top, wrote in, typed in monthly asset and liability statement and offered that as satisfaction of the court's order. After the evasiveness of Mr. Foreman on the stand, Judge Hughes ordered that Mr. Foreman sit for deposition, which would have been the first deposition in the case. At that deposition, he testified that although he could have produced the financial statements back in July because he had QuickBooks and all it would take, he had testified this, and this is in the record area I cited to you, all it would take was for him to hit on a drop-down menu, asset and liability print, that he failed to do that at any point prior to the deposition. He admitted that he modified the QuickBooks accounts after the inception of the case so that they would try to match the bank statements he was producing. So we don't even know what the QuickBooks statements looked like at the time of the inception of this case because he overrode them, and ultimately he never even produced the QuickBooks file. He only produced some items printed from the QuickBooks file, items which reflected inconsistencies between the bank statements and a third-party accountant who produced records later on in the case. And so I would point the court to those record sites because it would take me too long to go through all the different inconsistencies, the admissions and deletions, the failure to produce. He admitted in deposition that he had not turned over to his trial counsel all the documents on his laptop computer. He admitted he had not turned over internal communications between him and the workers, documents that were in his KPMG email account. He admitted all of those things at his deposition, and those are all cited and highlighted in the record excerpts I've cited to you. So the conduct definitely was supported and warranted the court's decision. The court gave Mr. Foreman five chances to comply with the court's orders. Initially, the July and August orders were not subject to any sort of penalty or threat, but ultimately when the noncompliance was made apparent to him, he would progressively issue new orders which said, okay, I'm going to give you more time to comply, and if you don't comply, I'll strike. And then again, I'll give you more time to comply, but if I don't, I'll strike, over and over again. I counted five separate instances where he was given additional time to produce and there's a threat of sanctions hanging over his head. Well, if you don't mind, let's go right to where they started, which may be the most compelling part of the argument, and that is, where in the world did the judge get these numbers? These numbers were uncontroverted numbers submitted by my client in support of the motion for judgment. Attached to our motion for judgment was a spreadsheet noting the damages, how they were calculated. So this is an illustration of Mr. Farmer, who's the principal of my client, in great detail, using only the information we're able to glean from what was produced and to make assumptions based on that information to create this. And so there's, so attached to the motion for judgment, which is in the record, is the spreadsheets, is the affidavit, and is an explanation of how those numbers were calculated. So, for example, over a period of time, Mr. Farmer declared that— So in your motion for judgment, you asked for, it's $300,000. Correct, Your Honor. And so based on the calculations of the records produced, there was approximately $2 million of income that Mr. Forman received over the period of time in question. Of that $2 million of income, amounts were deducted for payments that Mr. Forman's company would have to pay to the workers who did the work, accounting for expenses that would be incurred by Mr. Forman in doing that, and then doing those splits pursuant to the contract from that. So deriving all of those information about the income, less expenses, and what was left over to be then split among the parties, that's how those numbers were developed. Those numbers, and at the hearing, there was no counter-affidavits, there were no other challenging of how those calculations were done. The only thing that Judge Hughes had in front of him as to what the proper numbers should be were the calculations submitted by my client. Same thing with regard to attorney's fees, uncontroverted. I testified on attorney's fees, and Mr. West cross-examined me on attorney's fees, but they did not offer an alternate method of calculation or submit to the court what proper attorney's fees should be. And the amount the court awarded, is that identical to the amount you requested? Actually, the amount awarded as attorney's fees is about $5,000 less than what we requested. And no additional amounts were set aside by the court for appeal, although we requested them. So the record, I think, supports the fact that the sanctions were warranted, and I'll note for the record that the Notice of Appeal does not challenge any of the discovery orders, it doesn't challenge any of the sanction, the order striking, the pleadings, all that is challenged in the Notice of Appeal is the judgment and the denial of the motions for a new trial, those two motions. Judge Hughes noted in his reasons with respect to the sanction, sort of the death penalty sanction of striking everything, but he said he was willing to rescind the order if there was thorough and prompt compliance. How was that intention communicated to the other side and what time interval was there to purge, if you will, the sanction before the hammer was dropped? The last date of any documents being produced by the defendants was in November of 2012. After November of 2012, we submitted a pleading identifying all the testimony of Mr. Foreman that was inconsistent, deletions, et cetera. After that, the judge issued his order saying he's going to strike pleadings if no prompt compliance is given. No production whatsoever, zero production since November of 2012. Although there were additional opportunities, and Mr. Foreman testified in his deposition that he had laptop documents that he had not turned over to his counsel that included documents related to Sec Con U.S. as well as to his other businesses. He admitted to commingling funds between making payments to his girlfriend out of the funds that are the subject of the dispute, iTunes purchases and things of that nature. He admitted, the record also reflected that another gentleman had created a website called Sec Con Services, a different company name, and had indicated that he was partnering up with Mr. Foreman. Items that indicated, would lead to the indication that a new company was being formed that would cut out my client from this business. So we're in the unique position, at least in my personal history, and there's not many cases like this one, where there is a claim by a plaintiff for damages against a defendant, and the defendant is complaining that our damages calculation is not correct, even though by the same token, they did not admittedly produce all the documents from which a correct calculation might have been otherwise made. The damages could be far more than what we found on this record. There could be other documents that weren't turned over, which would lead us to show that there could be twice as much, or maybe 10% more, some amount more, but we were not available. Those documents were never made available to us. Counsel makes the impossibility argument. He says, we produced 8,000 documents, or some number, and essentially what was being asked was to perform an impossible task, so to speak. What's your response on that? Your Honor, and I'll go back again to signing for you that those documents at the Record on Appeal at 581 to 691, because these are not documents which are impossible to produce. The tax returns for his company, for instance, those were not produced. Were the custodians of any of those records subpoenaed, in other words, I heard him say it was a small business, or small in the sense of minimum employees, or whatever the case may be, were there, either through the depositions or other discovery, the custodians of the records identified, or was it the case that Mr. Foreman, or whomever, possessed everything, as opposed to some third party, the bookkeeper, the CPA, or whomever? He testified, by way of declaration, that he was the sole custodian of records. He was the sole person that had anything to do with Sec Con U.S. It was a one-person operation, and that, in fact, he— All this was on his laptop? I'm not sure that it was all on his laptop. He testified, for instance, that there were other files on paper. He may have had other computers, but they were all his. He was the only person with access to any of these places, and he used that as a mechanism at one point in October of 2012. The judge had ordered on October 2, 2012, that by the 5th of October, he should produce all the documents required to produce in the July and August orders. So he submitted an affidavit asking for protection of the court from that order, and saying that since he's only a one-person operation, he doesn't have the time, due to some travel and some other work obligations, to comply by the 5th, even though he had been ordered to do these things since July and August of that year. So he put in the record himself the fact that he was the sole custodian. He said, I have thousands of emails to produce, and so I don't have time to do it. Of course, thousands of emails were never produced. Only maybe a handful or a few hundred, at the most, pages of emails were, in fact, produced. So he was the person responsible. He's the sole person responsible for the custody of the records. He admitted that he didn't turn such documents over to his counsel. He admitted altering documents. He admitted deleting them. He said, in his own affidavit, I do not have a practice of retaining the emails and the invoices I get from these workers. That was his grounds for the impossibility, that he didn't have, he deletes them. So it's impossible to produce. How about responding to the claim that your complaint to which the contract was attached does not support liability? The two grounds were asserted by Judge Hughes for liability. Breach of contract and money hadn't received. They were alleged against both defendants, both Seccon U.S. and Mr. Foreman. So the pleadings clearly state that both defendants are being alleged to have breached the contract, that both are alleged to have money which, in equity and good conscience, belongs to the plaintiff. And so the allegations are indisputable in that regard. In terms of an inconsistency over whether there was some ambiguity in a contract term, those issues are defenses. Texas law treats an ambiguity as an affirmative defense to the extent that it was never raised. But even if it had been, it would have been stricken. Whether there was a sufficient basis based on the testimony in front of Judge Hughes for him to render his decision in the way he did and calculate the numbers the way he did was not clearly erroneous, which is the standard of this court in assessing the damages to be assessed. And it's fully supported by the pleadings. In fact, there was an admission of that. Hearing on damages or whatever paper was filed with the court, objections or whatever you filed. Was there any assertion that the damages were calculated incorrectly or that recovery couldn't be had for this had and received money in the light of breach of contract being claimed? I was there, and I'm sorry, but I do not recall whether that specific money hadn't received issue was raised. Mr. West, who is trial counsel, presented arguments to the court that were reflected in the opposition, the written opposition that was filed to the motion for judgment on the pleadings. So we filed a motion for judgment on the pleadings, Mr. West filed a response. And at the hearing, he restated and re-urged the matters stated in the response. So whatever, I can say for you, to you that whatever was stated in his response was reiterated in open court. But no additional, I don't recall any additional new grounds being asserted at that hearing that weren't already reflected in the pleading, in the response. The Mr. Counsel for the appellants indicated that there was an inconsistency between the pleadings and the judgment in that the pleadings reflected only seven contractors being discussed in the fact section. But in fact, the damages sought reflected ten contractors. Well, that was a function of the fact that Mr. Foreman, only after some later versions of some of the documents produced, was it revealed that he had hired additional contractors under the terms of the contract. And those persons were added. So there was three individuals who were not originally identified to my client at the time the pleading was prepared. But ultimately were admittedly part of the KPMG work, an ultimate clear path work that was done later. So the pleading again is simply an allegation of breach of contract and money hadn't received against both defendants. Mr. Foreman admitted that he commingled funds, that he had the funds that were subject matter of dispute in his possession. Those funds were assessed to belong to my client. And that at this point, given the record before us, it's a simple matter of with no answer on file, which is justified. Is, did the pleading state claims for money hadn't received and breach of contract? Yes, they do. And no contest to the damages calculated. I see my time has expired, thank you. All right, thank you, Mr. Rodriguez. Mr. Campbell, you have rebuttal. I understand that I wasn't there. And I understand that the record on discovery is not necessarily very good for Mr. Foreman. But even assuming that the sanctions were appropriate, a default judgment is not a confession of liability where the pleading does not support an award of damages. That's the fundamental principle, I think, in this case. And that is, and I think you heard it here. Did you hear any discussion whatsoever about the language of the contract that says, in case of dispute, all monies will be received by the SECON company that performs the work? Now, you don't hear anything about that. And the reason why you don't hear anything about that is that the agreement of the parties was honored. There was no agreement as to who was primary or secondary. There was a dispute. SECON US did the work. SECON US got paid. And there was nothing inequitable about that. There was never any argument. It just seems that that all goes to the nature of having tried this thing, to dispute all that you say. But what we've got up here on appeal is an amalgam of these discovery issues and so on and so forth, which sort of entangles that you're arguing about a default judgment, etc. I don't think so. What I'm saying is I'm- Well, you're arguing that the contract doesn't call for the relief gun, etc. I mean, that's the whole point of having a trial, to try the case. And that didn't happen. No, what I'm saying is that even if you take it on its face, the contract would not support any award of damages. It says, in the event of a dispute, all monies go to the respective SECON company that performs the work. That's what the contract says. So there's no question there's a dispute. When you have a lawsuit, you have a dispute, by definition. So on that basis alone, it's obvious that there was no agreement as to who was primary and who was secondary. And absent that agreement, there's no basis in that contract upon which you can split the money. The parties have said, if we aren't in agreement on who's primary and who's secondary, there's no split. So since there was no such agreement, there's no basis upon which the court could make a determination what either party would be otherwise entitled to. It would be contrary to the agreement to award any damages where there's no agreement as to the split. Because they've said specifically, in the event of dispute, the money goes to the respective SECON company that performs the work. That's what they agree to. And on that basis alone, we believe that the judgment is contrary to the contract. It's contrary to the principle of money had and received is a restitutionary remedy. And this court held, in one of Judge Stewart's cases, the Haislip case, that where the parties perform under the understanding that they have an agreement and there's no fraud, there's no inequitable conduct, you can't recover from money had and received. So on the face of the pleading, it does not support the damage award. Now, we've had some dispute. At which hearing did Judge Hughes make the comment, and you quoted in your brief, about, well, both parties dispute what the contract says, so there must be a contract. No, no, no. He said just the opposite. He said— Just tell me the hearing. You know what I'm talking about. You comment about— I don't know that he said that necessarily, but I think that's actually in the order. I think that's in the ultimate order of awarding the damages. He said since both parties sued on the contract, that must be the contract. I agree. That is the contract. That is what the parties thought their agreement was, but it was nothing more than an agreement to agree. And where they were able to agree and they performed, fine. But once they were no longer able to agree, that document says that the money is retained by the party that does the work. Now, a couple of things that I think you do need to look very closely at— His comment was both sides sued on the same contract, so it must exist between the parties. Right. Exactly. And that is what the parties had both agreed on. I think that's true. But what they said was basically we have an agreement to agree. If we can reach an agreement on who's primary and who's secondary, we're going to split them— Now, he's saying both parties sued on the same contract. Right. I assume he's referring to a counterclaim by your clients— Yes. —against Security UK in response to Security UK's complaint. Correct. Yes. And your client's answer, including the counterclaim, was struck. Yes, it was. But that doesn't change the fact that the complaint failed to state a claim upon which really could be granted where there was a dispute. Now, one thing, just very quickly, I've got like 10 seconds here. Even if you believe that it was otherwise an appropriate judgment, there was no basis in the pleading upon which Mr. Foreman could be held personally liable for this contract. Didn't the judge do that because the corporate— Exactly. He's sui sponte on his own, created a theory of liability that's not in the— No, it would be helpful if you'd let me finish my statement before you answer it. I'm running out of time. I'm out of time. I'm sorry. You're never out of time to succinctly answer a judge's question, but you've got to let the question be asked before you do it. The judge went on the Internet and found that the corporate certificate, for want of a better term, had been rescinded and imposed personal liability. I mean, that's one of the bases. And, of course, you say he couldn't do that sui sponte, but that's part of the basis for personal liability against Mr. Foreman, isn't it? That was the judge's thinking that the corporation no longer existed. OK, and there's a couple of points there. One, that theory of liability wasn't pled. There's nothing to that effect regarding a forfeiture in the pleadings. But more importantly, under the Texas tax code, you've got 120 days to seek reinstatement. And, in fact, that's exactly what happened here. When Mr. Foreman found out that there had been an issue, he got the entity reinstated. And under the Texas tax code, once there's a reinstatement, it's as if the forfeiture never occurred. But even if you say, well, you can't take that into account because we're looking at the cutoff date being the date the judgment was entered, and you can't revive it even though the statute says you can, this tax code provides for personal liability only for debts incurred after the forfeiture. And there was no suggestion by judge Hughes or by anyone that this purported indebtedness was created after the purported forfeiture. So even if the forfeiture had occurred, it would not support the judgment. All right. Thank you, Mr. Campbell. Thank you. And, Mr. Rodriguez, the case is submitted on the brief. Send your argument.